Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| VERÓNICA MALDONADO NEGRÓN<br><br>Apelante<br><br>V.<br><br>ANÍBAL GONZÁLEZ PÉREZ Y OTROS<br><br>Apelada | KLAN202400115 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Coamo<br><br>Caso Núm.: CO2019CV00578 (SALÓN 1)<br><br>Sobre: DAÑOS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2024.

La apelante, Verónica Maldonado Negrón, solicita que revoquemos la Sentencia Sumaria que el Tribunal de Primera Instancia dictó en su contra.

Los apelados, Tilda Ivette Santiago Martínez, Glenda Lee González Torres, Alex Aníbal González Martell y Jeniffer Marie González Martell presentaron su oposición.[1]

Los hechos que preceden la controversia que atendemos hoy son los siguientes.

**I.**

Antes del caso que nos ocupa hubo un pleito de desahucio entre las partes. En dicha ocasión, Aníbal González Pérez presentó una demanda de desahucio sumario contra la apelante por incumplir con el pago de cánones de arrendamiento y de los

---

[1] El recurso ante nuestra consideración fue originalmente presentado contra el señor Aníbal González Pérez, su esposa, la señora Tilda Ivette Santiago Martínez y la sociedad legal de gananciales compuesta por ambos. Durante el transcurso de los trámites apelativos, el señor González Pérez falleció, siendo sustituido por sus tres hijos, la señora Glenda Lee González Torres, el señor Alex Aníbal González Martell y la señora Jeniffer Marie González Martell.

Número Identificador

SEN2024 _____

servicios de agua y electricidad en la propiedad objeto de la controversia entre las partes. La apelante presentó una reconvención en la que alegó que la apelada incumplió con el acuerdo de culminar la construcción del salón billar. Durante ese primer pleito, el TPI sancionó económicamente a la parte apelada, porque incumplió la orden de notificar personalmente a la apelante del corte del servicio de electricidad. No obstante, las partes llegaron a un acuerdo, mediante el cual la apelante entregó al señor González Pérez las llaves del local arrendado. Por su parte, el señor González Pérez desistió sin perjuicio de su causa de acción, debido a que la apelante manifestó su intención de radicar una reclamación. De manera que, el TPI acogió el acuerdo para que ambas partes tuvieran la oportunidad de presentar sus respectivas causas de acción en un pleito ordinario. El caso de desahucio culminó con una sentencia de archivo por desistimiento de la demanda y de la reconvención, sin perjuicio. Véase, Minuta de la vista del 9 de enero 2019.

El 8 de noviembre de 2019, la apelante presentó la demanda por incumplimiento de contrato y daños y perjuicios de este caso contra el señor Aníbal González Pérez, su esposa y la sociedad legal de gananciales. La demanda incluyó las alegaciones siguientes. El 2 de agosto de 2018 firmó un contrato de arrendamiento con la parte demandada. El objeto del contrato es el inmueble descrito en la demanda que es propiedad de la parte demandada. El negocio conocido como Flamboyán Criollo, ubicado en dicho inmueble es una barra y restaurante. La apelante entregó cinco mil dólares ($5,000.00) al demandado por la llave del negocio y asumió el pago de los servicios de energía eléctrica y agua. La demandada mantuvo a su nombre ambos servicios y fijó en cien dólares mensuales ($100.00) el pago del servicio de agua, sin considerar cuál sería el gasto que generaría la arrendataria.

Además, indujo a error y a violar la ley a la arrendataria, porque exigió que las patentes y los servicios de agua y electricidad permanecieran a su nombre.

La demanda incluyó las alegaciones a continuación. La parte demandada se obligó a terminar de construir el salón del billar en treinta (30) días, contados a partir de la firma del contrato. El 10 de septiembre de 2018 firmaron un Addendum a Contrato de Arrendamiento Local Comercial en el que la demandada se comprometió a reparar el piso del salón billar en un (1) mes. Este término comenzó a partir de la fecha en que se firmó el adendum. La demandada incumplió en ambas ocasiones la obligación de reparar el salón billar y lo mantuvo en una condición peligrosa para los clientes. Dicha parte se negó a arreglar el piso del salón billar, a pesar de los requerimientos de la apelante. Su incumplimiento impidió que la apelante utilizara el salón billar, que su negocio funcionara en su totalidad y le causó grandes pérdidas económicas.

Por último, la demanda incluyó las alegaciones a continuación. El 27 de febrero de 2019, la apelante envió una carta por correo certificado al señor Aníbal González Pérez para informarle que iba a presentar una demanda en su contra. La carta tenía la intención de interrumpir el término prescriptivo. La apelante tuvo que llamar a la policía y prohibirle la entrada al negocio porque intentó influenciar a los clientes para que no volvieran. La apelante solicitó a la parte demandada la devolución de los cánones de arrendamiento pagados y los cinco mil dólares ($5,000.00) de la llave del negocio, a cambio le devolvería la llave y saldaría las cuentas de servicio eléctrico y agua. La parte demandada se negó a aceptar los acuerdos y presentó una demanda de desahucio y cobro de dinero, de la cual desistió. Dicha parte ha actuado de mala fe desde el inicio de la relación

contractual. La apelante sufrió daños, debido a que: (1) la parte demandada colocó un candado a la caja de encendido eléctrica a mediados de diciembre de 2018, (2) pidió y obtuvo una orden para cortar el servicio y (3) logró que se cortara en violación a la orden del 20 de diciembre de 2018 en el caso de desahucio. El tribunal sancionó a la demandada por cortar el servicio de electricidad sin notificarlo. La demandada adeuda a la apelante cinco mil dólares ($5,000.00) por la llave del negocio. Además, responde por los daños y perjuicios ocasionados por la cancelación del servicio de electricidad y porque el negocio no pudo operar desde mediados del mes de diciembre de 2018 y parte del mes de enero 2019. Véase, pág. 12 del apéndice.

La parte demandada negó las alegaciones de la demanda y alegó que realizó las mejoras a satisfacción de la apelante y que esta utilizó el negocio sin limitación alguna. Dicha parte presentó una reconvención en la que adujo que la apelante incumplió con el pago de los cánones de arrendamiento desde el mes de noviembre de 2018 hasta julio de 2019 y le adeuda $10,800.00. Además, reclamó el pago de $2,500.00 por la deuda del servicio de agua potable y de energía eléctrica. Véase, pág. 17 del apéndice.

La apelante negó las alegaciones de la reconvención y alegó las defensas de incuria, novación de contrato y mala fe de la parte demandada. Véase, pág. 25 del apéndice.

Según consta en el Informe Preliminar sobre Conferencia con Antelación al Juicio, para la apelante las controversias se circunscribían a determinar:

1. Si el contrato es nulo porque tiene cláusulas que son contrarias a la ley.

2. Si la demandada incumplió con el contrato de arrendamiento porque no reparó el piso del salón billar.

3. La responsabilidad de la demandada de mantener el área del billar en una condición peligrosa para los visitantes.

4. El grado de responsabilidad de la parte demandada por el incumplimiento con algunas cláusulas del contrato del arrendamiento y del adendum.

5. Las pérdidas de ingresos que el incumplimiento de la demandada ocasionó a la apelante.

6. La responsabilidad del demandado por entrar al negocio en varias ocasiones para intentar influenciar a los clientes para que no regresaran y que ocasionó que la policía lo sacara del local.

7. Si los demandados están obligados a devolverle los $5,000.00 dólares que pagó por la llave del negocio.

8. Si el demandado actuó de mala fe durante la firma del contrato y en los meses en que la apelante estuvo en la posesión del negocio.

9. Si la demandada hizo actos dirigidos a poner un candado en la caja de encendido de electricidad.

10. El grado de responsabilidad civil de la demandada.

11. La responsabilidad de la demandada por los daños que sufrió la apelante, debido a la desconexión del servicio de electricidad sin notificarle previamente como ordenó el tribunal en el caso de desahucio.

12. La cuantía de los daños que la parte demandada causó a la apelante cuando canceló el servicio de electricidad y violó el contrato y el adendum.

13. Los daños que la acción culposa de la demandada de evitar la operación del negocio ocasionó a la apelante.

14. Los daños que la radicación frívola de la acción de desahucio ocasionó a la apelante.

15. Si el apelado actuó ilegalmente e indujo a la apelante a que violara la ley, cuando le pidió que le dijera a la policía y a los agentes del Departamento de Hacienda que era su empleada para no tener que cambiar los permisos del negocio.

16. Si el demandado se aprovechó del desconocimiento de la apelante del idioma español para inducirla a violar la ley y considerando que es un comerciante con mucho conocimiento de la ley sobre los negocios.

17. La determinación de los daños económicos, morales y angustias mentales por la cantidad solicitada en la demanda.

La parte demandada apelada alegó en el Informe que las controversias eran las siguientes:

1. Si la falta de pago de la apelante de los cánones de arrendamiento constituyó un incumplimiento de contrato.

2. Si la apelante tiene derecho a recuperar lo que pagó por la llave del negocio, a pesar de que operó el negocio y culminó con un desahucio.

3. Si a pesar de que la apelante aceptó y estuvo satisfecha con el trabajo del piso del salón de billar, su apreciación es causa para incumplir con el contrato y no pagar los cánones de arrendamiento y los servicios de agua y energía eléctrica.

4. Si la apelante cumplió con el contrato a pesar de que no pagó los cánones de arrendamiento el mes de octubre de 2018 y los meses de noviembre de 2018 a julio de 2019.

5. Si la apelante cumplió con el contrato de arrendamiento a pesar de que pagó los servicios de energía eléctrica y agua potable.

6. Si la apelante es responsable del pago de las deudas de energía eléctrica y agua potable que corresponden a la demandante.

7. Si corresponde el reclamo de pago de cánones de arrendamiento correspondiente a la totalidad del contrato de arrendamiento suscrito por las partes el 2 de agosto de 2018, incluyendo los meses de noviembre a diciembre de 2018 y de enero a julio de 2019.

El 6 de abril de 2022, la demandada, aquí apelada, pidió al TPI que dictara sentencia sumaria a su favor. Dicha parte adujo que de la declaración jurada que acompañó, los documentos adjuntos y los escritos presentados, surge claramente que la apelante incurrió en un incumplimiento de contrato que desembocó en una acción de desahucio y que no existe controversia de que las mejoras al piso del salón billar fueron realizadas. La moción de sentencia estuvo acompañada de unos mensajes de texto con foto y una declaración jurada de los apelados. Véase, pág. 59 del apéndice.

La apelante se opuso a la moción de sentencia sumaria, porque no se presentó en el término de treinta (30) días, a partir de finalizado el descubrimiento de prueba, establecido en la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V. Véase, pág. 74 del apéndice. La parte apelada reiteró la solicitud de sentencia sumaria y alegó que la apelante incumplió con la Regla 36(c) porque no acompañó prueba alguna ni declaraciones juradas para sustentar sus alegaciones. La apelante presentó moción en oposición acompañada de una declaración jurada en la que alegó que existía controversia de los hechos materiales a continuación:

1. Si el demandado cumplió con la obligación contraída en el Addendum de terminar la construcción del salón billar.

2. La autenticidad del mensaje de texto con fotos que la demandada presentó para sustentar que la apelante recibió a satisfacción el cumplimiento de la obligación de terminar dicha construcción.

3. Si las cláusulas 5 y 12 del contrato son nulas porque son contrarias a la ley, la moral y el orden público.

4. Si procede el pago de lo establecido en la cláusula 5 del contrato, a pesar de ser contraria a la ley, la moral y el orden público.

5. Si hay nulidad parcial del contrato de arrendamiento.

6. Si la cláusula 13 del contrato constituye la compraventa del negocio.

7. Si el demandado incurrió en actos culposos al influir e intimidar los clientes del negocio.

8. La autoridad del demandado para cortar los servicios de electricidad y la cuantía del daño ocasionado.

9. Si procede el pago de los cánones de arrendamiento de los meses de noviembre a julio de 2019, a pesar de que entregó la llave en enero de 2020.

10. Si procede el pago de cánones cuando la llave se entregó como parte de un acuerdo en el caso de desahucio.

11. Si el término para presentar una moción de sentencia sumaria es treinta (30) días, a partir de

culminado el descubrimiento de prueba o treinta (30) días, a partir de una orden del tribunal.

12. Si procede que se permita a la apelante presentar una segunda oposición, cuando el demandado ha presentado dos solicitudes de sentencia sumaria con argumentos distintos.

El TPI resumió los asuntos litigiosos a determinar si la apelante incumplió sus obligaciones contractuales conforme al Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052 y por consiguiente, no puede demandar el cumplimiento de la parte contraria.

El foro apelado determinó que la parte apelada probó como hechos esenciales incontrovertidos que:

1. La parte demandante es Verónica Maldonado Negrón, mayor de edad, vecina del estado de Florida, Estados Unidos de América.

2. La parte demandada está compuesta por Aníbal González Pérez y Tilda I. Santiago Martínez, mayores de edad, casados entre sí y vecinos de Coamo, Puerto Rico.

3. La parte demandante sabe leer y escribir correctamente en el idioma español, pues ha suscrito mociones por derecho propio bajo el caso CO2018CV00242, sin dificultad alguna.

4. El 2 de agosto de 2018, las partes suscribieron un contrato de arrendamiento.

5. Dicho contrato fue ampliamente negociado y discutido por la demandante y el codemandado hasta comparecer ante un notario para su firma. (Este hecho fue determinado a base de la Declaración Jurada número 943, ante la notario María del Pilar Guzmán González).

6. El 10 de septiembre de 2018, la demandante y el codemandado Aníbal González Pérez firmaron un Addendum, luego de renegociar unos aspectos, específicamente relacionados al área donde estaba ubicado el billar. Este hecho está basado en la Declaración Jurada.

7. La parte demandante pagó los cánones de arrendamiento correspondientes a los meses de agosto, septiembre y octubre de 2018, según lo pactado en el contrato. Este hecho está basado en la Declaración Jurada.

8. La nulidad del contrato de arrendamiento ni la del Adendum han sido solicitadas durante la vigencia del contrato ni posterior a ello.

9. La parte demandante notificó al codemandado Aníbal González Pérez, mediante mensaje de texto, su satisfacción con las mejoras realizadas al piso del salón billar.

10. La parte demandada tenía hasta el 10 de octubre de 2018 para realizar las mejoras acordadas al piso del local arrendado, conforme a lo pactado en el Addendum.

11. La parte demandante realizó el pago correspondiente al mes de octubre, en cumplimiento con los acuerdos del Addendum y debido a su aceptación y conformidad con las mejoras realizadas al piso del salón billar. Este hecho fue determinado a base del recibo de pago firmado por las partes el 5 de octubre de 2018, la Cláusula SEGUNDO, inciso TRES y la Declaración Jurada.

12. La demandante pagó personalmente al codemandado el canon de arrendamiento del mes de octubre de 2018. El pago lo realizó el 5 de octubre de 2018 en las facilidades del negocio en Coamo, Puerto Rico. Este hecho está basado en la Declaración Jurada y en el recibo de pago firmado por las partes, con fecha de 5 de octubre de 2018.

13. La parte demandante se obligó a pagar un canon mensual de arrendamiento por mil doscientos dólares ($1,200.00), a partir del mes de agosto de 2018 hasta julio de 2019.

14. La parte demandante se obligó a cumplir puntualmente con el pago del canon de arrendamiento, los días primero de cada mes hasta la terminación del contrato, aun cuando abandonara o desocupara la propiedad arrendada, antes de cumplirse el término acordado.

15. La parte demandante incumplió el contrato suscrito el 2 de agosto de 2018 porque no realizó los pagos de los meses de noviembre y diciembre de 2018, ni los correspondientes a los meses de enero a julio de 2019, como se obligó. Este hecho está basado en el Requerimiento de Admisiones cursado a la demandante el 7 de mayo de 2021 y a la Contestación a Requerimiento de Admisiones del 9 de junio de 2021.

16. La parte demandante se obligó a pagar un cargo mensual fijo de cien dólares ($100.00) por el consumo de agua potable. Este cargo estaría vigente durante la vigencia del contrato.

17. La parte demandante incumplió el contrato porque no realizó los pagos por el servicio de agua potable, correspondientes a los meses de noviembre y diciembre de 2018. Esta determinación está basada en

el Requerimiento de Admisiones cursado a la demandante el 7 de mayo de 2021 y la Contestación al Requerimiento de Admisiones del 9 de junio de 2021.

18. La parte demandante se obligó a pagar mensualmente el consumo de energía eléctrica.

19. La parte demandante consumió energía eléctrica desde septiembre hasta diciembre de 2018. El gasto total de su consumo fue de $1,576.03.

20. Durante la vigencia del contrato, la demandante únicamente abonó a la Autoridad de Energía Eléctrica quinientos dólares ($500.00) en el mes de diciembre de 2018.

21. Las partes no llegaron a otros acuerdos respecto a los cánones de arrendamiento no pagados ni a las deudas por los servicios de agua potable y energía eléctrica en el caso de desahucio que no fueran entregar la propiedad y el desistimiento sin perjuicio.

22. La apelante tenía una deuda por el consumo de energía eléctrica desde septiembre hasta diciembre de 2018 equivalente a mil setenta y seis dólares con tres centavos ($1,076.03).

23. La deuda de la apelante por cánones de arrendamiento no satisfechos desde noviembre de 2018 hasta julio de 2019 equivale a diez mil ochocientos dólares ($10,800.00).

Según el TPI, la apelante presentó un escrito escueto en el que no controvirtió los hechos que la parte apelada alegó probados y se limitó a alegar que la moción de sentencia sumaria se presentó fuera de los términos establecidos. El foro apelado incluyó la relación de hechos contenida en el escrito en oposición a moción reiterando sentencia sumaria. No obstante, determinó que la apelante estableció los hechos materiales siguientes:

1. El 2 de agosto de 2018, las partes otorgaron un Contrato de Arrendamiento.

2. La Cláusula 13 establece cómo la demandante pagó $5,000 por la llave del negocio.

3. Dicho contrato se otorgó ante el abogado notario José Aníbal Gierbolini Rosa.

4. El 10 de septiembre de 2018, las partes realizaron un Addendum al antes mencionado contrato ante el mismo notario.

5. El 9 de noviembre de 2018, el demandado presentó un procedimiento de desahucio contra la demandante.

6. El 10 de enero de 2019 se dictó sentencia parcial en el caso de desahucio y multó al demandado por no notificar personalmente a la apelante de la desconexión del servicio de energía eléctrica.

El foro primario concluyó que: (1) el incumplimiento contractual de la apelante desembocó en una acción de desahucio y cobro de dinero en su contra, (2) sus alegaciones de que el demandado no mejoró el piso del billar no tenían fundamento, porque pagó el arrendamiento del mes de octubre y sus mensajes de texto confirman que el apelado realizó las mejoras a su satisfacción.

El TPI concluyó que la demandante incumplió con el contrato suscrito el 2 de agosto de 2018, porque no pagó los cánones de arrendamiento desde el mes de noviembre de 2018 hasta el mes de julio de 2019, ni los servicios de agua potable y de energía eléctrica. El foro apelado declaró no ha lugar la demanda y ha lugar la reconvención y ordenó a la apelante pagar al demandado diez mil ochocientos dólares ($10,800.00) de cánones de arrendamiento, doscientos dólares ($200.00) por el servicio de agua potable y mil setenta y seis dólares con tres centavos ($1,076.03) por el servicio de electricidad.

Inconforme, el apelante presentó este recurso en que alega que:

Erró el Tribunal de Instancia al declarar HA LUGAR una Moción de Sentencia Sumaria habiendo vigentes varias controversias medulares de hecho y derecho, y a pesar de la admisión de los apelados de la existencia de siete (7) controversias en el Informe con Antelación a Juicio.

Erró el Tribunal de Instancia al sustentar su determinación en prueba inadmisible y controvertida.

Erró el Tribunal de Instancia al acoger una Moción de Sentencia Sumaria fuera de término violando así lo que establece la Regla 6.6 y 36.2 de Procedimiento Civil.

Erró el Tribunal de Instancia al determinar que hubo una prórroga del término para presentar la Moción de Sentencia Sumaria a pesar de que nunca le fue solicitada por los apelados.

Erró el Tribunal de Instancia al limitarse a resolver una (1) de las dos (2) causas de acción presentadas por la apelante.

**II.**

**Moción de Sentencia Sumaria**

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2, 32 LPRA Ap. V. La Regla 36 contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición.

La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra*. La sentencia sumaria no puede dictarse cuando, (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

Las declaraciones juradas en apoyo u oposición a la moción de sentencia sumaria tienen que estar basadas en el conocimiento personal del o de la declarante, contener hechos admisibles en evidencia y demostrar que el declarante está cualificado para declarar sobre su contenido. Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico resolvió en *Ramos Pérez v. Univisión,* 178 DPR 200, 216 (2010), que las declaraciones juradas con solo conclusiones y sin hechos específicos que las apoyen, no tienen valor probatorio y son insuficientes para demostrar la existencia de lo que allí se concluye. Las declaraciones juradas que son meramente conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal, son insuficientes para derrotar una moción de sentencia sumaria.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra*, y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su

oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Cruz, López v. Casa Bella y otros,* supra; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

La Regla 68.2 de Procedimiento Civil, 32 LPRA Ap. V, concede discreción al tribunal para prorrogar un término en cualquier momento, siempre que exista justa causa. El tribunal podrá: (1) previa moción o notificación, o sin ellas, ordenar que se prorrogue o acorte el término, si así se solicita antes de expirar el término originalmente prescrito o según prorrogado por orden anterior, o (2) en virtud de moción presentada después de haber expirado el plazo especificado, permitir que el acto se realice si la omisión se debió a justa causa, pero no podrá prorrogar o reducir el plazo para actuar bajo las disposiciones de las Reglas 43.1, 44.1, 47 , 48.2, 48.4, 49.2 y 52.2, salvo lo dispuesto en las mismas bajo las condiciones en ellas prescritas.

## Doctrina General de los Contratos

Según lo establecido en el Art. 1044 del Código Civil de 1930 vigente a la fecha de los hechos, 31 LPRA sec. 2994, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de los mismos. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA sec. 3371. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, la moral, ni al orden público. Art. 1207, 31 LPRA sec. 3372. La validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes. Art. 1208, 31 LPRA sec. 3373. Cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233, 31 LPRA sec. 3471. No obstante, en ocasiones, la voluntad de las partes no puede determinarse con la mera lectura de las cláusulas contractuales. Cuando esa es la situación, será necesario juzgar la intención de los contratantes a la luz de los actos anteriores, coetáneos y posteriores al contrato, así como las circunstancias indicativas de la voluntad de las partes. *Cruz, López v. Casa Bella y otros,* supra. Los contratantes que incurren en negligencia, dolo o morosidad en el cumplimiento de sus obligaciones están sujetos a indemnizar por los daños causados. Art. 1054, 31 LPRA sec. 3018.

## Autenticación de Evidencia

La Regla 901 de Evidencia, 32 LPRA Ap. VI, gobierna el procedimiento de autenticación e identificación de evidencia. El inciso A establece que la admisibilidad de la evidencia está sujeta a que se cumpla con el requisito de autentificación o identificación como una condición previa. El requisito de autentificación o

identificación se satisface cuando se presenta evidencia suficiente para sostener que la materia en cuestión es lo que el proponente sostiene. El estándar de suficiencia de la prueba es menor que la preponderancia de la prueba y mucho menor que fuera de toda duda razonable. La determinación del juzgador de que se presentó prueba suficiente para autenticar el objeto y admitir la evidencia, no será alterada en apelación, salvo un claro abuso de discreción. La evidencia debidamente autenticada será admisible, a menos que el tribunal la excluya al amparo de la Regla 403 de Evidencia, 32 LPRA Ap. VI, o que opere alguna regla de exclusión de derecho probatorio. El inciso B de la Regla 901, *supra,* nos provee ejemplos de cómo la evidencia puede ser autenticada o identificada.

### III.

Los señalamientos de errores primero, segundo y quinto serán discutidos conjuntamente, porque están íntimamente relacionados. La apelante aduce que el TPI únicamente dispuso de una de las controversias y que la decisión está basada en prueba inadmisible y controvertida. Su representación legal sostiene que el TPI no atendió, ni resolvió o resolvió incorrectamente varias controversias medulares.

La apelante tiene razón. El TPI dictó sentencia sumaria a base de una evidencia que no es admisible, porque no fue debidamente autenticada, determinó hechos a pesar de que la prueba fue controvertida y no atendió ni resolvió varias controversias medulares para la adjudicación del caso.

El foro apelado se equivocó, porque dio por hecho que la apelante aceptó la construcción del salón billar. Su decisión es errada, porque está basada en unas fotos y mensajes de texto que no fueron autenticados. La apelante objetó oportunamente la admisibilidad de esa prueba en el Informe Preliminar sobre Conferencia con Antelación al Juicio, como lo exige la Regla 104,

*supra.*[2] Según consta en ese informe, la apelante objetó la admisión de las fotografías del billar y los mensajes de texto relacionados a las mejoras que se realizaron al piso de esa área, porque no fueron autenticadas conforme a la Regla 901, *supra.*

Las fotografías del área del billar y los mensajes de texto presentados por la apelada no fueron debidamente autenticadas. La apelada incumplió con la Regla 901, *supra,* porque no demostró que la prueba ofrecida es lo que alegaba que era. El foro apelado cometió un craso error de derecho al adjudicar un hecho esencial del caso basado en prueba no autenticada, inadmisible al momento de la adjudicación. El TPI erró al dar por hecho que la apelante aceptó como buenos todos los trabajos que la apelada realizó en el salón billar, incluyendo el piso, a base de prueba que no fue debidamente autenticada. El 5 de noviembre de 2018, la representación legal de la apelante envió una carta a Aníbal González Pérez que nos deja claro que existe controversia sobre su aceptación de las obras que se realizaron en el salón billar. La representación legal de la apelante advirtió expresamente al señor González Pérez sobre su incumplimiento y le invitó a un diálogo constructivo para resolver las controversias. El abogado informó al demandado que la apelante ofrecía dos alternativas. La primera, entregarle el negocio a cambio de que le devolviera los cinco mil dólares ($5,000.00) que pagó por la llave. La segunda, era aplicar esos cinco mil dólares ($5,000.00) a las mensualidades del canon de arrendamiento, lo que significaba que tenía tres (3) meses pagos, a partir del mes de noviembre.

El TPI también erró al adjudicar hechos esenciales a base de la Declaración Jurada de los señores Aníbal González Pérez y Tilda Ivette Santiago Martínez. Véase, pág. 72 del apéndice. La parte

---

[2] También se presentó objeción a la admisibilidad en la *Moción en oposición a moción reiterando sentencia sumaria,* pág. 86 del apéndice.

apelada acompañó la moción de sentencia sumaria con la Declaración Jurada en la que ambos declararon lo siguiente:

1. Verónica Maldonado fue enfática en que todos los servicios permanecieran a prueba y se mantuvieran a su nombre y accedieron a que fuera por un año.

2. Verónica Maldonado se ha dirigido en todo momento en el idioma español y los documentos que han firmado han sido en ese idioma.

3. El 10 de septiembre de 2018 firmaron un segundo documento porque el asunto del billar tomó más tiempo.

4. El 5 de octubre de 2018 el apelado y la apelante acudieron al negocio a inspeccionar el piso y encontraron que las mejoras se realizaron conforme la señora Maldonado Negrón pidió.

5. El 5 de octubre de 2018 el apelante hizo dos pagos de trescientos dólares ($300.00) equivalentes al canon de arrendamiento de mil doscientos dólares ($1,200.00) y cien dólares ($100.00) por servicio de agua, sin reserva ninguna y muy complacida por atender su solicitud.

6. Durante los meses de agosto y septiembre de 2018, la apelante hizo los pagos de arrendamiento y del servicio de agua potable, pero no pagó el servicio de electricidad.

7. El 5 de octubre de 2018 abordaron a la apelante porque hacía dos (2) meses que no pagaba el servicio de electricidad. La apelante les dijo que el pago estaba en proceso.

8. Al momento de presentar la demanda de desahucio, la apelante les adeudaba el canon de arrendamiento del mes de noviembre de 2018, el pago del servicio de agua de ese mes y del consumo de energía eléctrica desde agosto de 2018.

9. La apelante no consignó cantidad de dinero alguna en el caso de desahucio, ni se alcanzó ningún acuerdo sobre lo adeudado.

Por su parte, la apelante hizo una declaración jurada en la que controvirtió lo declarado por Aníbal González Pérez y Tilda Ivette Santiago Martínez. La apelante, (1) negó que el 5 de octubre inspeccionó el piso del billar y quedó satisfecha y declaró que fue todo lo contrario, (2) declaró que se percató que los demandados trataron de engañarla con una foto que no mostraba la verdadera realidad del lugar, (3) anejó una foto del 6 de octubre de 2018 en

donde se ve el piso del salón billar lleno de cemento y sin terminar (Véase foto tomada que es parte de la identificación 1 de la parte demandante en el caso), (4) decidió aguantar los pagos porque el demandado nunca terminó el piso del salón, (5) su abogado le envió una carta al demandado y su respuesta fue la demanda de desahucio y cobro de dinero en su contra, (6) durante el proceso de desahucio, el demandado le desconectó el servicio de electricidad, (7) el tribunal multó a los demandados por desconectarle el servicio, (8) el demandado le impidió trabajar en el período navideño y la obligó a entregarle la llave del negocio para que no se acumularan más cánones de arrendamiento. Véase, pág. 89 del apéndice.

El foro apelado falló al no atender ni adjudicar las reclamaciones por daños que la apelante incluyó en la demanda. La apelante reclamó daños porque, (1) tuvo que llamar a la policía y prohibirle al demandado entrar al negocio, debido a que intentó influenciar a los clientes para que no volvieran, (2) sufrió pérdidas económicas porque el demandado puso un candado en el contador y cortó el servicio electricidad sin notificarle personalmente, (3) la apelada presentó un pleito de desahucio frívolo y (4) actuó de mala fe desde el inicio de la contratación. Nos queda claro que el señor Aníbal González Pérez pidió a la Autoridad de Energía que cortara el servicio eléctrico sin notificarle personalmente a la apelante como ordenó el TPI. Durante el pleito de desahucio, el señor Aníbal González Pérez reconoció que no notificó personalmente a la apelante la desconexión del servicio de electricidad, como el tribunal le ordenó. Su abogada atribuyó el incumplimiento a que la apelante estaba fuera de Puerto Rico y alegó que le notificó por correo con acuse de recibo. El TPI advirtió que ordenó la notificación personal de la apelante, para prevenir que el corte del servicio eléctrico tuviera un efecto económico adverso para el

negocio. El 10 de enero de 2019, ese foro dictó una Sentencia Parcial en la que impuso una sanción económica de cien dólares ($100.00) al demandante por cortar el servicio de electricidad, sin notificar personalmente a la apelante como le ordenó. No obstante, el foro apelado omitió atender la reclamación por los daños que el corte de energía ocasionó a la apelante. Igual silencio guardó sobre la reclamación de daños por entrar al negocio e intentar influenciar a los clientes.

El TPI tampoco atendió ni adjudicó las alegaciones de que el señor Aníbal González Pérez indujo a la apelante a pactar las cláusulas 5 y 12 del contrato de arrendamiento y que dichas cláusulas son nulas. Las partes acordaron que la arrendataria pagaría el consumo de energía eléctrica y agua. No obstante, ambos servicios permanecerían a nombre de arrendador, así como las patentes del negocio. La sentencia apelada no atiende ninguna de las alegaciones relacionadas a las cláusulas citadas. Por último, el TPI no atendió ni adjudicó la controversia relacionada a determinar, si los apelados estaban obligados a devolver a la apelante el dinero que pagó por la llave del negocio.

La propia apelada reconoció en el Informe Preliminar sobre Conferencia con Antelación al Juicio, la existencia de controversia sobre los hechos esenciales siguientes:

(1)     Si la falta de pago de la apelante de los cánones de arrendamiento constituyó un incumplimiento de contrato.

(2)     Si la apelante tiene derecho a recuperar lo que pagó por la llave del negocio, a pesar de que operó el negocio y culminó con un desahucio.

(3)     Si la apreciación de la apelante es causa para incumplir con los pagos de los cánones de arrendamiento y los servicios de agua y energía eléctrica, a pesar de que aceptó y estuvo satisfecha con el trabajo del piso del salón de billar.

(4)     Si la apelante cumplió con el contrato, a pesar de que no pagó a tiempo el canon de arrendamiento

del mes de octubre de 2018 y no pagó los cánones de los meses de noviembre de 2018 a julio de 2019.

(5) Si la apelante cumplió con el contrato de arrendamiento, a pesar de que no pagó los servicios de energía eléctrica y agua potable.

(6) Si la apelante es responsable del pago de las deudas de energía eléctrica y agua potable.

(7) Si procede el pago de los cánones de arrendamiento correspondientes a la totalidad del contrato del 2 de agosto de 2018, incluyendo los meses de noviembre a diciembre de 2018 y de enero a julio de 2019.

Los señalamientos de errores tres y cuatro serán discutidos conjuntamente porque están íntimamente relacionados. La apelante alega que la apelada presentó la moción de sentencia sumaria vencido el término de treinta (30) días establecido en la Regla 36.2, *supra,* y no demostró justa causa para su incumplimiento. Su representación legal argumenta que la apelada tenía hasta el 17 de noviembre de 2021 para presentar la moción de sentencia sumaria, porque el descubrimiento de prueba finalizó el 18 de octubre de 2021.

La apelada sostiene que presentó la moción de sentencia sumaria a tiempo, porque el TPI concedió treinta (30) días, a partir de la radicación del Informe de Conferencia con Antelación al Juicio para presentar mociones de carácter dispositivo. Su representación legal argumenta que ese informe se presentó el 23 de marzo de 2022 y la moción de sentencia sumaria se presentó oportunamente, el 6 de abril de 2022.

El TPI atendió y adjudicó la moción de sentencia sumaria, porque resolvió que el término para su presentación no es jurisdiccional y la Regla 68.2, *supra,* permite que se prorrogue si existe justa causa.

El foro apelado no cometió el tercer y cuarto señalamiento de error. La Regla 36.2, *supra,* concede treinta (30) días a las partes para solicitar sentencia sumaria, a partir de la finalización del

descubrimiento de prueba. El TPI determinó que el descubrimiento de prueba finalizaría, cuando el Tribunal de Apelaciones emitiera su dictamen. El mandato de ese foro se notificó el 18 de octubre de 2021. Véase, pág. 41 del apéndice. No obstante, el 7 de marzo de 2022, el TPI concedió treinta (30) días a las partes, a partir de la presentación del Informe de Conferencia con Antelación al Juicio Enmendado, para presentar mociones de carácter dispositivo. La apelante no expresó oposición alguna. Véase, págs. 42-43 del apéndice. El informe enmendado se presentó el 23 de marzo de 2023. Véase, pág. 44 del apéndice. A partir de esa fecha, las partes tenían treinta (30) días para presentar una moción de carácter dispositivo. La parte apelada presentó oportunamente la moción de sentencia sumaria el 6 de abril de 2022. Véase, pág. 59 del apéndice.

El TPI abusó de su discreción porque: (1) adjudicó sumariamente la totalidad del caso a favor de la apelada, sin atender ni resolver controversias medulares, (2) determinó hechos que fueron controvertidos por la apelante y (3) determinó hechos basados en prueba inadmisible que no fue autenticada.

**IV.**

Por los fundamentos expuestos se revoca la sentencia sumaria apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Domínguez Irizarry concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones